UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID E. KATES, | : | 3:11-CV-00391 |
| | : | |
| Plaintiff | : | (Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| B.A. BLEDSOE, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

**I. Introduction.**

The plaintiff, David E. Kates, who is a federal prisoner at the United States Penitentiary at Lewisburg claims that the cell conditions at USP Lewisburg violate the Eighth Amendment.   The remaining defendant, the former warden of USP Lewisburg, moved for summary judgment contending that he is entitled to qualified immunity. Because Kates failed to establish an Eighth Amendment violation and it was not clearly established that the conditions to which he was subjected violated the Eighth Amendment, we recommend that the motion for summary judgment be granted.

## II. Background and Procedural History.

Kates began this *Bivens* action by filing a complaint naming as defendants B.A. Bledsoe, the Warden of the USP Lewisburg, and Harley G. Lappin, the Director of the Federal Bureau of Prisons. Kates complains about the conditions of confinement at USP Lewisburg. He alleges that he is in his cell 23 to 24 hours a day. According to Kates, the cells are hot and can reach temperatures up to 120 degrees, the cells are not properly ventilated, and they have no air circulation. Kates also alleges that the cells are roach and rat infested and that the roaches are breeding by the thousands and cannot be controlled. He further alleges that the cells have rust around the toilets, chipped lead paint, and traces of asbestos. According to Kates, his health has deteriorated, and, because of the conditions, he has suffered insect bites, weight loss, heat rashes, insomnia, and respiratory problems.

Kates alleges that since his arrival, in July of 2010, at USP Lewisburg, he attempted to inform all concerned parties of the conditions verbally and through the administrative remedy process. In January of 2011, he served an informal complaint regarding the conditions on defendant Bledsoe, but, he alleges, defendant Bledsoe

failed to adequately respond to his complaint.   He asserts that defendant Bledsoe has authority to enforce all program statements and all other policies governing the prison.

Kates claims that the conditions under which he is housed amount to cruel and unusual punishment in violation of the Eighth Amendment.   He seeks injunctive relief as well as nominal, compensatory, and punitive damages. After screening the complaint, the court dismissed the claims against defendant Lappin, leaving defendant Bledsoe as the only defendant.

In October of 2011, defendant Bledsoe filed a motion to dismiss or, in the alternative, a motion for summary judgment.   Although the defendant filed a statement of material facts in support of his motion for summary judgment, that statement dealt with the purposes of the Special Management Unit at Lewisburg and not with the condition in the cells there.   Thus, the defendant's statement of material facts did not address Kates's Eight Amendment claim.   For that reason and because there were outstanding discovery issues, the Court addressed the motion as a motion to dismiss.   After the court denied his motion to dismiss the complaint, defendant Bledsoe filed an answer to the complaint.

On January 15, 2013, the defendant filed a motion for summary judgment, which has been fully briefed and is ripe for decision.   For the reasons set forth

below, we recommend that the defendant's motion for summary judgment be granted.[1]

## III. <u>Summary Judgment Standard.</u>

The defendant has moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

_____

[1] On July 16, 2013, Kates filed a petition seeking a writ of mandamus commanding the undersigned to issue a decision in this case.   Given this Report and Recommendation, that petition is now moot.

4

323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c).   If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, *supra*, 477 U.S. at 322.   Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.   "Where the record taken as a whole could not lead a rational trier of fact to find

5

for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, supra,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).


**IV. The Material Undisputed Facts.**

A party who seeks to resist a summary judgment motion must comply with Local Rule 56.1, which specifically provides that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements" and that "[a]ll material facts set forth in the

statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."   Under this Rule, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed admitted.

Further, a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).   Rather, "[o]nce the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner—whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial." *Id.*

In accordance with Local Rule 56.1, the defendant filed a statement of material facts and supporting documents, and Kates filed a response to the statement or material facts.   While Kates states that he disputes a number of the facts set forth by the defendant, he does not cite to record evidence to support such a dispute.   Accordingly, we consider those facts to be undisputed for purposes of this summary judgment motion.   Based on the statement of material facts filed by the defendant and Kates's response, the following facts are undisputed.

Kates, who was convicted of possession of a controlled substance, is serving a 360-month sentence in the Bureau of Prisons with a release date in 2025. He has been housed in approximately 13 institutions. In July of 2010, the BOP transferred Kates to USP Lewisburg, and Kates has resided there since.

Asbestos abatement occurred at USP Lewisburg in 2008-2009, prior to Kates's arrival, and asbestos was completely removed from the inmate living areas at that time. Although Kates complained about a roach infestation, in 2010, his unit was fumigated, and he acknowledges that there is no roach infestation in his cell now. He asserts that now there is only the occasional roach and other insect. The Safety Department fumigates the institution as the need arises. Further, safety staff make monthly rounds throughout the institution, and inmates can talk with staff during these rounds or submit an Inmate Request to Staff to address their concerns.

Kates claims that there were days in the summer that the temperature reached 95 to 100 degrees, and he guessed that the cells were another five to fifteen degree hotter because the cells had steel-type walls that hold the heat. He did not, however, have a thermostat in his cell, and he has no expertise in how structures maintain heat. Kates had a window that he could open in his cell, and he used cold water that he had in his cell to treat his heat-related issues. He

claims that the defendant knew of the excessive heat in the cells because he sent him a complaint about the heat in January or February of 2011.   In that complaint to the defendant, Kates also complained about other alleged living conditions.

Kates claims that over the last two years, he complained to medical staff about a sleep disorder, insomnia, heat rashes, nose bleeds, recurring headaches, loss of weight, insect bites, burning eyes, problems going to the bathroom, and difficulty breathing.   He does not have any medical support to show that those maladies were proximately caused by his living conditions, but he asserts that he did not have those problems prior to his incarceration at USP Lewisburg.   He acknowledges that he has allergy problems that are being treated by the medical staff.   He also conceded that a physician's assistant responded to his requests and treated him for his issues, including prescribing an anti-fungal powder, hydrocortisone lotion, allergy tables, and salt to replace lost electrolytes.   The physician's assistant also told him to keep his rashy areas clean and dry and to contact the medical staff if he had significant heat stress.   As to Kates's complaints of breathing problems, which he claims occur when the temperature reach 85 degrees or above, the physician's assistant noted that he found no documented airway disease, and he informed Kates that his issues were not life threatening.   As to Kates's complaint of sleeping problems, the psychology staff

provided him with information regarding these issues.   Although Kates

complained about weight loss, he did not state that his weight loss was unsafe or

life threatening.   Kates complains that he continues to have problems, such as

headaches and eye issues, but he conceded that the medical staff is treating him

for his alleged issues.


## V.   Discussion.

### A.   The Summary Judgment Motion Is Not Improper.

Before addressing the merits of the defendant's motion for summary judgment,

we address Kates's contention that the motion is improper because the court already

denied a prior summary judgment motion filed by the defendant.   There is, however,

no bar to the current summary judgment motion.   The defendant's prior motion was

treated as a motion to dismiss rather than a summary judgment motion.   Thus, in

denying that motion the court held only that the allegations in the complaint stated a

claim upon which relief can be granted, not that there were material factual disputes

which required a trial.   We are now considering for the first time whether summary

judgment is warranted.   Therefore, because the court did not hold before that there

were material factual dispute that require a trial, the current motion for summary

judgment motion does not implicate the law-of-the-case doctrine, which generally "directs courts to 'refrain from re-deciding issues that were resolved earlier in the litigation.'" *Ingram v. S.C.I. Camp Hill*, 448 F. App'x 275, 278 (3d Cir. 2011)(quoting *Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)). Further, even if the prior motion had been treated as a summary judgment motion, where, as here, there is an expanded record, a second summary judgment motion is permissible. *See Ingram, supra,* 448 F. App'x at 278 (holding that the trial judge did not abuse his discretion in considering a second summary judgment motion); *Krueger Assocs., Inc. v. Am. Dist. Tel. Co. of Pa.,* 247 F.3d 61, 65–66 (3d Cir. 2001) (holding that the district court appropriately considered a motion for summary judgment filed after the close of discovery even though it denied a prediscovery motion). So we reject Kates's contention that the current motion is barred or improper.

### B. The Defendant Is Entitled to Qualified Immunity.

Defendant Bledsoe contends that he is entitled to qualified immunity. Because, defendant Bledsoe did not violate Kates's clearly established rights, we agree that he is entitled to qualified immunity.

## 1. Qualified Immunity Standard.

Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Id.* "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow, supra*, 457 U.S. at 818-19.

The qualified immunity analysis has two prongs. *Pearson, supra,* 555 U.S. at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.* The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The court is permitted to exercise its discretion in deciding which of the two

prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case. *Pearson, supra,* 555 U.S. at 236. So it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. *Id.*

In this case, based on the undisputed facts and applying the benchmarks applicable to qualified immunity, we conclude that defendant Bledsoe is entitled to qualified immunity.


## 2. Kates Has Failed to Establish an Eighth Amendment Violation.

An Eighth Amendment claim, like the one raised by Kates in this case, gives rise to a two-prong analysis: Eighth Amendment claims must satisfy both an objective component (the deprivation must be sufficiently serious) and a subjective component (the defendant must have been deliberately indifferent). *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992). As to the objective component, the Eighth Amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To violate the Eighth Amendment, the prisoner must be "denied basic human needs, such as food, clothing,

shelter, sanitation, medical care [or] personal safety." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). The focus is on whether the prisoner was deprived of a particular basic necessity:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991)(citations omitted). The amount of time a prisoner is subject to a condition is also important: "[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of "grue" might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978).

Further, determining whether "conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to" the conditions. *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

15

"It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

"[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *Tsosie v. Dunbar*, 3:CV-10-2104, 2012 WL 1191642 (M.D. Pa. Apr. 10, 2012). The Constitution does not mandate comfortable prisons, *Wilson v. Seiter,* 501 U.S. 294, 298 (1991), and conditions which are not cruel and unusual are not unconstitutional. *Rhodes*, *supra,* 452 U.S. at 347 (1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

In this case, Kates alleges that he was exposed to asbestos, but the undisputed facts establish that the asbestos was abated prior to the time he entered USP Lewisburg. Although Kates also complains of chipped lead paint and rust around the toilets, he has not presented evidence to support that there is lead paint. Nor has he presented evidence that any of his purported health problems were caused by lead paint or rust around the toilets. Thus, he has not established a violation of the objective component

of the Eighth Amendment. *See generally, Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008)("The peeling paint or an unpleasant odor in a cell described in this record, along with the absence of any evidence of serious injury, does not amount to constitutional deprivation.").

Here, Kates also complains about his cells being roach and rat infested. "A prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute" a constitutional violation. *Sain, supra,* 512 F.3d at 894. But the undisputed facts in this case establish that, in 2010, Kates's unit was fumigated, and Kates acknowledges that there is no roach infestation in his cell now. He asserts that now there is only the occasional roach and other insect. He has not presented evidence to support a rat infestation. In these circumstances, Kates has not established an infestation sufficiently serious to violate the Eighth Amendment. *See Tucker v. Rose,* 955 F.Supp. 810, 816 (N.D.Ohio 1997) (the "occasional presence of a rodent is insufficient to establish the objective component of an Eighth Amendment claim, which requires that a deprivation be sufficiently serious"); *Hill v. Smith,* No. 4:05-CV-1724, 2005 WL 2666597 at *7 (M.D.Pa. Oct. 19, 2005) (noting that "[t]he presence of mice and cockroaches [at USP Lewisburg] does not appear to present a health hazard in this case").

Kates's most serious allegations concern the temperature in the cells. Inmates "have a right to adequate ventilation and a right to be free from extreme hot and cold temperatures[,] . . . "[b]ut the Constitution does not give inmates the right to be free from all discomfort." *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986). Kates has presented declarations from other inmates stating that cells were hot and lacked ventilation. *See Doc. 178* at 18 (declaration of Bandon Holmes stating that it was like living in a microwave and being roasted alive); *Doc. 178* at 19 (declaration Tyrone McCullon stating that the cells are about 115 to 125 degrees); *Doc. 178* at 24 (declaration of Darrell Parks stating that "[t]he cell is too hot in the summer time because there isn't any air conditioning or cooling system."); *Doc.178* at 26 (declaration of Bobby R. Collins stating that there are rust and mold problems because of water leaks and humidity from the hot weather and lack of air ventilation system). But Kates has not presented evidence about the number of days that he was subject to what he and other inmates considered excessive heat. As to some of his inmate witnesses, it is not clear for what period of time they had knowledge of the conditions, and as to inmate McCullon he states that he was moved to G-Block in June of 2012, a period of time for which it appears that the defendant was no longer the Warden.[2]

------------------------

2  In his declaration, McCullon refers to the Warden at J.E. Thomas *See also*

18

Moreover, Kates has not pointed to evidence that he suffered any significant harm from the heat. The undisputed evidence also shows that he had a window in his cell and running water, both of which can be seen to ameliorate somewhat excessively hot conditions. Even assuming for the sake of argument that Kates has presented sufficient evidence for a reasonable trier of fact to conclude that based on the heat he was denied the minimal civilized measure of life's necessities, he has not presented sufficient evidence for a reasonable trier of fact to conclude that that the defendant was deliberately indifferent to a substantial risk of serious harm.

As to the subjective component, the question is whether the prison official acted with deliberate indifference to the inmate's health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope, supra,* 536 U.S. at 738.

---

Marcie Moore, *The Daily Item,* (Apr. 3, 2012), http://dailyitem.com/0100_news/
x1437247504/UPS-at-Lewisburg-Warden-Bryan-A-Bledsoe-retires.

Kates has not presented evidence from which a reasonable trier of fact could conclude that the defendant was deliberately indifferent to a substantial risk of serious harm. Although Kates alleges harsh conditions and that those conditions caused him medical problems, he has not presented evidence to support many of his allegations, and he has offered no competent medical evidence to support a connection between his problems and the conditions. The defendant cannot be liable for conditions before he knew about those conditions, and Kates has not established the specific conditions that persisted after he notified the defendant.[3] Moreover, the mere fact that Kates, and others, complained about conditions does not show that the defendant believed that those conditions posed a substantial risk of serious harm. And in this case, the mitigation efforts undertaken—e.g., the asbestos abatement, the fumigation of the cellblock—and that fact that Kates had a window in cell, water in his cell, and had access to the medical staff militate against a finding of deliberate indifference. In fact, there is no evidence in the record that the defendant subjectively knew that the

————————————

[3] Kates attached a page listing outside temperatures for July 6, 2010 through July 24, 2010. Even assuming that this list is proper summary judgment evidence, the list relates to temperatures for a period prior to early 2011, the date the undisputed facts establish that Kates complained to the defendant about the conditions.

conditions posed a substantial risk of serious harm. Accordingly, Kates cannot establish the subjective component of an Eighth Amendment violation.

### 3. It Was Not Clearly Established that the Conditions Violated the Eighth Amendment.

Even assuming for the sake of argument that Kates has presented evidence sufficient to establish an Eighth Amendment violation, it was not clearly established that the conditions established by this summary-judgment record were unconstitutional.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier, supra,* 533 U.S. at 202. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). Because this inquiry focuses on the official's actual situation, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." *Montanez v. Thompson*, 603 F.3d 243, 251 (3d Cir. 2010) (quoting *Saucier, supra,* 533 U.S. at 201). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson, supra*, 555 U.S. at 244

(quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)).   "'If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.'" *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009)(quoting *Saucier, supra,* 533 U.S. at 202). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012)(quoting *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011)).

Kates's has not pointed to any cases, and we have not found any cases, holding that the conditions shown to exist by the summary-judgment record in this case violate the Constitution.   Moreover, other cases that have addressed the conditions at USP Lewisburg have not found a constitutional violation. *See Mitchell v. Dodrill,* 696 F.Supp.2d 454, 467 (M.D.Pa.2010) (granting summary judgment to the defendants on claim that the conditions at USP Lewisburg violated the Eighth Amendment); *Hill v. Smith*, 4:05-CV-1724, 2005 WL 2666597 at *7 (M.D. Pa. Oct. 19, 2005)(stating the following regarding the conditions at USP Lewisburg: "Economic constraints prevent the Warden or the Bureau of Prisons from installing climate control in every cell. The presence of mice and cockroaches does not appear to present a health hazard in this case. Although Hill suffers discomfort while incarcerated at USP Lewisburg, it cannot be said that he faces a "substantial risk of serious harm" that has been disregarded by

prison officials.").   Given the case law, it was not clearly established that the conditions violated the Eighth Amendment.

We note that Kates contends that 28 C.F.R. §541.21 clearly established his right to live in a humane, sanitary cell.   That regulation, however, merely sets forth what Special Housing Units are and their functions:

> Special Housing Units (SHUs) are housing units in Bureau institutions where inmates are securely separated from the general inmate population, and may be housed either alone or with other inmates. Special housing units help ensure the safety, security, and orderly operation of correctional facilities, and protect the public, by providing alternative housing assignments for inmates removed from the general population.

28 C.F.R. § 541.21.   Perhaps, Kates meant to refer to 28 C.F.R.§ 541.31, which deals with conditions in SHU's and provides, in part, that "living quarters will be well-ventilated, adequately lighted, appropriately heated, and maintained in a sanitary condition."   Even so, the existence of that regulation does not mean that it was clearly established that the conditions to which Kates was subjected violated the Eighth Amendment.

Because it was not clearly established that the conditions to which Kates was subjected violated the Eighth Amendment, the defendant is entitled to qualified immunity.

## VI. Recommendation.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the defendant's motion (doc. 171) for summary judgment be granted.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of July, 2013.

S/Susan E. Schwab
Susan E. Schwab
United States Magistrate Judge

24